**Kevin FOX, Plaintiff–Appellee,**

v.

**ALLIED–SIGNAL, INC., f/k/a Garrett Alresearch Manufacturing Co. of California, Defendant–Appellant.**

No. 91–5587.

United States Court of Appeals, Eleventh Circuit.

July 16, 1992.

Linda Singer Stein and J. Thompson Thornton, Thornton David Murray Richard & Davis, P.A., Miami, Fla., for defendant-appellant.

G. William Bissett, Preddy, Kutner, Hardy, Rubinoff, Thompson, Bissett & Bush, Miami, Fla., for plaintiff-appellee.

Before FAY and BIRCH, Circuit Judges, and DYER, Senior Circuit Judge.

FAY, Circuit Judge:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO ARTICLE 5, SECTION 3(b)(6) OF THE FLORIDA CONSTITUTION, FLORIDA STATUTES § 25.031, AND RULE 9.150, FLORIDA RULES OF APPELLATE PROCEDURE.

TO THE SUPREME COURT OF FLORIDA AND THE HONORABLE JUSTICES THEREOF:

This diversity personal injury case concerns the question of whether a court must submit a non-party's comparative fault to a jury apportioning the liability of the parties pursuant to Fla.Stat. § 768.81(3).[1] We have determined that this issue of law is dispositive of the case, that there are two Florida appellate cases that conflict on this issue, and that there is no clear, controlling precedent in the decisions of the Supreme Court of Florida. We therefore certify the following question of law to the Supreme Court of Florida, in accordance with Rule 9.150, Florida Rules of Appellate Procedure.

**I. STYLE OF THE CASE.**

The style of the case in which this certificate is made is as follows: Kevin FOX, a citizen of Florida, Plaintiff–Appellee, versus ALLIED–SIGNAL, INC., a California Corporation, Defendant–Appellant, Case No. 91–5587, United States Court of Appeals for the Eleventh Circuit, on appeal from the United States District Court for the Southern District of Florida.

**II. FACTUAL AND PROCEDURAL BACKGROUND.**

On March 9th, 1990, plaintiff-appellee Kevin Fox was working for Eastern Airlines as a technician performing maintenance and overhaul on the electrical systems of airplanes. Fox was servicing an aircraft fan, Allied fan model 73 FA18, when his fingers were caught in the rotating blades of the fan. The fan did not have a safety screen at that particular moment. Allied's maintenance and service manual did not indicate that a safety screen or guard needed to be used over the fan while it was being serviced. Moreover, Eastern Airlines and its employee, Kevin Fox, failed to place a guard or screen over the fan. Eastern Airlines was nonetheless aware of the OSHA requirement that guarding be placed over rotating machines to protect operators from hazards, 29 C.F.R. § 1910.-212 (1991). Further, Eastern had established a system for using safety screens, it had instructed its employees on the use of

---

1. Section 768.81(3) of the Florida Statutes provides:

   APPORTIONMENT OF DAMAGES.—In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that party on the basis of the doctrine of joint and several liability.

such screens, and it had regularly scheduled maintenance programs to educate its employees on these procedures. Apparently, this accident occurred during a strike against Eastern, and Mr. Fox, as well as other employees, had only been engaged in this type of work for a short period of time. As "new hires," these individuals were given some training, but there is a serious question about its adequacy and what was in fact covered. Eastern Airlines was immune from suit pursuant to the Workers' Compensation Act, Fla.Stat. § 440.11.

As a result of the accident, Mr. Fox received permanent physical injuries: four fingers of his left hand were injured, two of which were amputated. He was able to return to work four months after the accident. Mr. Fox alleged that Allied was negligent in failing to instruct that the fan should be serviced with a safety screen, and in failing to warn of the fan's suction. The trial court denied Allied's request to allow the jury to consider and assess non-party Eastern's percentage of fault, if any, under Florida's Tort Reform Act, Fla.Stat. § 768.81 (1989). The court interpreted the statute to allow apportionment of fault only among the parties to the suit.

The jury found Allied to be seventy percent (70%) negligent and Mr. Fox thirty percent (30%) comparatively negligent. Mr. Fox was awarded a total amount of $350,000.00 in damages. Thus, the amended final judgment was $245,000.00. The district court denied Allied's motion for a new trial.

## III. REASONS FOR CERTIFICATION.

There are two cases from the Florida District Courts of Appeal that conflict in the interpretation of Fla.Stat. § 768.81 (1989). These cases are: *Messmer v. Teachers Insurance Co.*, 588 So.2d 610 (Fla. 5th DCA 1991) and *Fabre v. Marin*, 597 So.2d 883 (Fla. 3d DCA 1992). In *Messmer*, the Fifth District Court of Appeal held that § 768.81 mandates consideration of a non-party's comparative fault in apportioning the liability of the parties to the suit. Interpreting that statute and adopting the opinion of the trial court, the *Messmer* court stated:

> The use of the word 'party' simply describes an entity against whom judgment is to be entered and is not intended as a word of limitation. Had the legislature intended the apportionment computation to be limited to the combined negligence of those who happened to be parties to the proceeding, it would have so stated. The plain meaning should apply in the absence of any language altering or limiting the plain meaning.

588 So.2d at 611. The *Messmer* court determined that even if the statute were to be deemed ambiguous, the legislative intent and the purpose of the statute were to implement a system that equates fault with liability. The court found that the obvious purpose of the statute was to partially abrogate the doctrine of joint and several liability.

The decision in *Messmer* directly conflicts with the decision in *Fabre*. In *Fabre*, the Third District Court of Appeal affirmed the decision of a trial court that did not reduce a jury damage award by fifty percent, the percentage of negligence the jury attributed to a non-party. *Fabre* reasoned that § 768.81(3) is ambiguous because it fails to define the term "party." The court held that "in subsection three, 'party' may be interpreted as referring to: 1) persons involved in an accident; 2) defendants in a lawsuit; or 3) all litigants in the lawsuit." *Fabre*, 597 So.2d at 885. The *Fabre* court declined the first interpretation because § 768.81(3) requires the court to enter judgment against liable parties, and "the court lacks jurisdiction to enter judgment against nonparties." *Id.* at 885. The court held that it was not the intent of the legislature to allow consideration of non-party negligence and thereby "bar a fault-free claimant from recovery in the many situations where one of the tortfeasors is immune from liability." *Id.* at 886.

As these two cases conflict directly on the question of law dispositive of the instant matter, we respectfully certify that question to the Florida Supreme Court and the Honorable Justices of that Court.

## IV. QUESTION FOR CERTIFICATION.

WHETHER THE INTERPRETATION OF FLA.STAT. § 768.81(3) (1989) REQUIRES CONSIDERATION BY THE JURY OF A NON–PARTY'S COMPARATIVE FAULT IN ORDER TO DETERMINE A PARTY'S LIABILITY?

The phrasing of the question is not intended to limit the inquiry of the Florida Supreme Court. In answering the certified question, the Supreme Court is at liberty to consider the problems and issues involved in this case as it perceives them. In order to assist the Supreme Court, the entire record in this case, and copies of the briefs of the parties, are transmitted herewith.

QUESTION CERTIFIED.