SHEVIN, Judge.
Eduardo Oropesa Gonzalez appeals a vehicular homicide conviction. We reverse and remand for a new trial.
Gonzalez was charged with manslaughter stemming from the death of a pedestrian. At trial, the state’s theory was that the pedestrian died as a result of impact with Gonzalez’s vehicle. The defense theory was that the pedestrian died when he was struck by another vehicle and that this impact propelled the body onto Gonzalez’s automobile. The sole eyewitness to the incident gave conflicting accounts of the event at deposition and at trial. As a result, the case was a classic battle of the experts. Each party presented the testimony of an accident reconstruction expert who supported that party’s proposed theory of the case.
The state had originally listed Dr. Stephen Pustilnik, an associate medical examiner, who would testify regarding the autopsy report. Before trial began, the state sought to substitute Dr. Reinhard Motte for Dr. Pustilnik. Dr. Pustilnik had moved away from Miami. The state represented that Dr. Motte would testify about the autopsy report and the conclusions drawn therefrom, as Dr. Pustilnik would have done. Based on these representations, the substitution was accepted without objection.
However, contrary to the state’s representation, once Dr. Motte began to testify, he was questioned regarding terms of physics and how the pedestrian’s body would have moved pursuant to the laws of physics. Defense objection to the testimony was overruled. The prosecutor went on to provide Dr. Motte with different scenarios of how the accident could have occurred, and to ask for his expert opinion on those scenarios based on the laws of physics. The defense objection was again overruled.
On appeal, Gonzalez argues that the trial court abused its discretion in admitting this testimony from the medical examiner. We agree. The trial court allowed the state to substitute Dr. Motte for Dr. Pustilnik based on the state’s representation that the testimony of the former would be substantially the same as that of the latter — focusing on the content of the autopsy report. Disregarding its representation, the state then went on to elicit testimony from Dr. Motte on a whole new area that Dr. Pustilnik never testified to at deposition.
A trial judge has broad discretion in excluding testimony to avoid a “trial by ambush.” Office Depot, Inc. v. Miller, 584 So.2d 587, 589 (Fla. 4th DCA 1991). Pre-trial disclosure of witnesses eliminates “surprise and prevents trial by ambush.” Keller Indus. v. Volk, 657 So.2d 1200, 1207 (Fla. 4th DCA), revieio denied, 666 So.2d 146 (Fla.1995)(citing Binger v. King Pest Control, 401 So.2d 1310, 1314 (Fla.1981)). Unfortunately, that is just what occurred *1070 in this case. Without any prior warning or notice, the state’s expert was permitted to testify to new matters that were key to the state’s case without any warning or notice to the opposition. The admission of this testimony is inherently 'prejudicial. See Owens-Coming Fiberglas Corp. v. McKenna, 726 So.2d 361 (Fla. 3d DCA 1999).[1] Here the state was permitted to present opinion on a totally unexplored and undisclosed topic for this witness. This was “tantamount to permitting an undisclosed adverse witness to testify.” Department of Health & Rehab. Servs. v. J.B., 675 So.2d 241, 244 (Fla. 4th DCA 1996). Florida’s courts have repeatedly discouraged this type of trial by ambush. See Barrett v. State, 649 So.2d 219, 221 (Fla.1994).
We also note that the error was not harmless. The defense was allowed one accident reconstruction expert, which it deemed sufficient. No doubt the defense was misled by the belief that the state, also, would call only one such expert. However, the doctor’s testimony was tantamount to allowing the state an additional expert in this area. The admission of such pivotal testimony undoubtedly swayed the jury and prejudiced Gonzalez. As a result of Dr. Motte’s unforeseen testimony, Gonzalez suffered manifest prejudice and was subjected to an unfair trial. A new trial is required.
We are not unmindful of Gonzalez’s argument regarding errors committed during the state’s closing argument., Gonzalez is correct when he asserts that the prosecution impermissibly related matters restricted by an in limine order. However, our disposition today makes it unnecessary to address this point on appeal.
In addition, we feel compelled to address a collateral issue that has the potential to recur at trial.
In this case, the state’s first argument concerning the issue upon which the case has been decided was that defense counsel had not properly preserved same for appellate review. This argument has been correctly rejected by the Court. Even if the state’s suggestion that defense counsel’s objection was either not a proper objection at all or too general to have preserved the issue, for the reasons which follow, this Court would nevertheless, under the circumstances of this case, be compelled to consider Gonzalez’s arguments on appeal.
The trial judge in this ease apparently has an established policy of allowing trial counsel to articulate objections by stating only the single word, “objection.” At one point in the trial the judge said: “Please no more speaking objections either side. I want to hear objection and both sides be quiet.” Shortly thereafter the court returned to the subject: “Counsel, just about two minutes ago I advised you all an objection is one word. I heard several from you [defense counsel] and I heard several from you [prosecutor]. No more. One word only.”[2] During the course of the trial, the prosecutor and defense counsel made numerous objections. Of these, sixty-five complied with the judge’s instruction and consisted of the single word “objection,” without any mention of the grounds upon which they were based.[3] On these occasions the trial judge ruled without hearing grounds or argument.
*1071 The trial judge was justifiably concerned about speaking objections. This Court recently recognized that such objections are improper and further observed that “they constitute nothing less than unauthorized communications with, the jury.” Michaels v. State, 773 So.2d 1230 (Fla. 3d DCA 2000). The trial court’s effort to curtail such objections is therefore understandable.
During the course of this trial, defense counsel on several occasions expressed his concern that his failure to explain the legal grounds for his objections could compromise Gonzalez’s appellate rights. Counsel’s concerns were also understandable. Florida law is very clear that “[i]n order to be preserved for further review by a higher court, an issue must be presented to the lower court, and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved.” Tillman v. State, 471 So.2d 32 (Fla.1985). The purpose of this rule is two-fold and was explained by the Florida Supreme Court as follows:
Exceptions[4] to rulings of a trial court should be taken and noted at the time the ruling complained of is made, so that the trial court may be thereby warned of an intention to predicate an appeal thereon and be given an opportunity to correct or cure any error it has made by reversing its ruling should it upon further consideration decide so to do. An appropriate exception is also required to be timely interposed in order that opposing counsel may, for his own protection in the event of a favorable judgment, consent to a reversal of any erroneous ruling the trial judge may have made on his insistence and over the opposite party’s objection or protest .
Hall v. State, 119 Fla. 38, 160 So. 511, 513 (1935)(footnote and emphasis added). Accordingly, the purpose of objections goes beyond simply apprizing the trial judge of the commission of error, but also to bring the error to the attention of opposing counsel so that he or she may concede a meritorious objection and either avoid or endeavor to correct a mistake.
Where the trial judge refuses to hear the legal grounds for objections, this Court has no alternative but to consider any legal ground which would have supported the stated objection. In Henderson v. State, 94 Fla. 318, 113 So. 689, 696 (1927), the Florida Supreme Court explained this as follows:
[T]he court would have been committing grave error as well as injustice to have, in effect, denied defendants’ counsel the right to interpose any other and further objections to the argument of counsel for the prosecution, regardless of their character or propriety. If it were properly made to appear in any case that the trial judge had so gagged or closed the mouths of defendants’ counsel, an appellate court might well proceed to consider all assignments attacking the propriety of the argument for the prosecution thereafter made, on the assumption that specific objections would have been made but for the court’s arbitrary action.
(emphasis added). Although the trial judge may be perfectly willing to live with this, as stated in Henderson, parties have a right to hear the grounds for their opponents’ objections in the event that reversible error can be avoided by considering alternative courses of action. In the present case, counsel for the party not making *1072 the pertinent objection, the state, had an absolute right to know the grounds for same, rather than having to guess as to what defense counsel was objecting about and why the judge sustained or overruled the objection.[5]
On a different but related point, between the end of the testimony of the last defense witness and the testimony of the state’s rebuttal witness, there was a brief discussion during which defense counsel asked for permission to explain the objections he had made during the testimony of one of the expert witnesses. The judge refused to hear the objections but assured counsel he would have access to the record after the jury retired to deliberate. Similarly, during closing argument defense counsel objected on more than one occasion but was not allowed to articulate grounds. The grounds for these objections were also heard after the jury retired.
As promised, after the jury retired to deliberate, defense counsel was permitted to make his record. This, however, was obviously an exercise in futility as it was perfectly clear that the judge had already decided not to rule in defense counsel’s favor. Ironically, this objection addressed the issue upon which this Court now reverses Gonzalez’s conviction.
As concerns the objections made during closing arguments, the court decided that it would not hear legal argument on objections during summation. Rather, it was understood that the parties would be allowed to make their record after both sides concluded their arguments. This practice is not unique and is used by several judges in the Eleventh Judicial Circuit. Henderson also spoke to this situation:
A trial judge should not attempt to shut off proper objections to argument. On the other hand, a trial judge is not required to sit supinely by and see the argument of counsel for either side needlessly mutilated or destroyed by repeated captious and unfounded objections of opposing counsel. Considerable power and latitude are vested in the trial judge in such matters, and an important duty and responsibility imposed upon him, and his control over the arguments of counsel will not be disturbed by an appellate court unless a clear abuse of judicial discretion is shown.
Id. at 696. We feel compelled to observe that trial judges must be flexible in the exercise of this discretion. There are times where even highly improper comments or arguments made by a lawyer during summation can be remedied by a curative instruction given by the court immediately after the impermissible comment or argument is made. In many instances a delay in the giving of the instruction can significantly erode its effectiveness. Nevertheless, regardless of whether the objection is entertained during argument or thereafter, it must be considered and ruled upon before the jury is instructed. Article I, section 16 of the Florida Constitution provides that “In all criminal prosecutions the accused shall ... have the right ... to be heard in person, by counsel or both....”[6] This right necessarily implies that the accused will be heard at a meaningful time in the proceeding and that his or her objections and legal arguments will be fully considered on their merits, with a reasonable opportunity to prevail thereon if his or her position is meritorious. To delay consideration of the objection until after the jury retires to deliberate is the func *1073 tional equivalent of refusing to hear the same.
Based on the foregoing, we reverse and remand for a new trial.
Reversed and remanded.

. "Prejudice in this sense refers to the surprise in fact of the objecting party....” Department of Health & Rehab. Servs. v. J.B., 675 So.2d 241, 244 (Fla. 4th DCA 1996).

. Although this statement was made towards the end of the trial, a reading of the transcript establishes that the attorneys were on notice from the beginning that speaking objections were forbidden and that non-speaking objections required only the one word.

.In fairness to the trial judge, we note that on many occasions the lawyers violated the court's order and articulated the word "objection” and an additional word such as "hearsay,” or "speculative.” On most of these occasions the trial judge simply ruled without addressing the violation.

. The need to take "exception” to a ruling of the trial court was eliminated by chapter 22854, Laws of Florida (1945), which provided in pertinent part: "the appellate court shall review, without exception having been taken at trial, any question of law involved in any adverse ruling, order, instruction or thing whatsoever said or done at the trial ..., which thing was said or done after objection made and considered by the trial court. ...” (Emphasis added). See also Howland v. Cates, 43 So.2d 848, 850-51 (Fla. 1949); rule 6.7(g), Florida Appellate Rules (1957).

. We note that the judge treated both sides exactly the same. Nothing in this opinion is intended to suggest that the trial judge's policy favored one side over the other. Indeed, at different times during the trial, the transcript reveals both sides’ frustration with the court’s very strict policy.

. In this regard, the Code of Judicial Conduct also provides that: "A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law.” Fla.Code Jud. Conduct, Canon 3 B(7).